UNITED STATES, Appellee

v.

WILLIE ETCHON, Private E–1, U. S. Army, Appellant

3 USCMA 394, 12 CMR 150

No. 2077

Decided September 18, 1953

Lt Col Edgar R. Minnich, U. S. Army, Lt Col James C. Hamilton, U. S. Army, Capt William C. Irby, Jr., U. S. Army, and 1st Lt Levin H. Campbell, III, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, Lt Col William R. Ward, U. S. Army, Capt Irvin M. Kent, U. S. Army, and 1st Lt Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was tried by general court-martial in Korea for willful disobedience of the lawful order of a superior officer, and disrespect toward a superior officer, in violation of Articles 90 and 89, respectively, Uniform Code of Military Justice, 50 USC §§ 684, 683. He was found not guilty of the disobedience, but guilty of the disrespect. With

394

evidence of four previous convictions before it, the court sentenced the accused to a bad-conduct discharge, confinement at hard labor for six months and total forfeiture of pay and allowances. Intermediate appellate agencies affirmed the findings and sentence. We granted the accused's petition for review to determine the following question:

"Whether the record fairly raised the issue of knowledge under Charge II so as to require instructions thereon by the Law Officer."

The nature of the issue presented requires us to summarize the evidence in some detail. Shortly after noon on the day in question, one Captain Taylor and several other officers were in an officer's-barracks, when a Korean housegirl entered to complain that a soldier had struck her. Thereupon, Captain Taylor left the barracks, and, when the accused was pointed out as her assailant, Captain Taylor ordered him to enter the Operations Building and to remain there until the matter of the alleged assault was cleared up. The accused started to obey, but when informed that he was under arrest, attempted to leave the area. Captain Taylor then identified himself as an officer, and another officer advised the accused to do what Captain Taylor instructed him to do. When his attempt to leave was prevented by the appearance of several enlisted guards in the area, he directed the profane language, forming the basis of the charge of disrespect, toward Captain Taylor. When a second attempt to leave failed, he entered the Operations Building as originally directed.

The prosecution presented evidence that at the time of these incidents, Captain Taylor was wearing a cap with his insignia of rank upon it. A witness for the accused, however, asserted that the officer was bareheaded and no indicia of rank was visible. While the accused testified in his own behalf, his testimony was limited to the charge of disobedience. As to this offense, he asserted that at the time the order was given, he did not know that Captain Taylor was an officer.

At the conclusion of the testimony, the law officer outlined the essential elements of the offense of disrespect toward a superior officer in accordance with the "Proof" portion of paragraph 168, Manual for Courts-Martial, United States, 1951. No instruction was given by the law officer that the accused must know that Captain Taylor was in fact a superior officer.

In United States v. Charles F. Simmons, 1 USCMA 691, 5 CMR 119, decided September 26, 1952, we indicated the difficulty arising out of the provisions of the Manual for Courts-Martial, United States, 1951, concerning knowledge. However, in this class of cases, a designation of its category is unimportant. Because knowledge lies so close to the border line separating elements from defenses, we will not reverse because the law officer does not instruct upon it, if it is not *reasonably raised* as a factual issue. Our action in each case must be determined by the test established in United States v. Wallace, 2 USCMA 595, 10 CMR 93, decided June 3, 1953:

". . . if knowledge is conceded, if the evidence compels a finding that the accused knew the order was given by an officer, or if the record is barren of any evidence from which it could reasonably be inferred the accused might not know that a superior officer was issuing the order, then the error, if any, is nonprejudicial. If, on the other hand, the evidence permits a finding of lack of knowledge, then the accused has just cause to complain. . . ."

In this case, the evidence demonstrated that, at the time of the incident, it was broad daylight. Captain Taylor was wearing the insignia of his rank. Considering the length of time involved, coupled with all the other factors, there was no reason why the accused could not see the Captain's insignia. Prior to the accused's use of disrespectful language, Captain Taylor identified himself as an officer, and the information was further brought home to the accused by another person at the scene. No evidence presented by the accused rebutted this in the slightest degree. Whatever may have been the

**395**

situation when the officer first addressed the order to the accused, the evidence definitely indicates that at the time the accused was disrespectful toward Captain Taylor, he knew Captain Taylor was an officer. Accordingly, *no factual issue concerning the accused's knowledge was reasonably raised by the evidence.* Therefore, any error resulting from the law officer's failure to instruct upon knowledge did not prejudice the accused. United States v. Majia, 2 USCMA 616, 10 CMR 114, decided June 12, 1953; United States v. St. Pierre, 3 USCMA 33, 11 CMR 33, decided July 3, 1953.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

BROSMAN, Judge (concurring in the result):

I concur in the result reached by my brothers. See my separate opinion in United States v. Wallace, cited by the majority.